```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
CSI INVESTMENT PARTNERS II, L.P.,
et al.,
                    Plaintiffs,

        -against-                          00 Civ. 1422 (DAB)
                                           MEMORANDUM & ORDER
CENDANT CORPORATION, et al.,

                    Defendants.
---------------------------------------X
```
DEBORAH A. BATTS, United States District Judge.

On February 22, 2006, Magistrate Judge Eaton issued a Discovery Order ("Order"). On March 3, 2006, pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, Defendants filed Objections to this Order, and Plaintiffs responded to Defendants' Objections on March 9, 2006. In addition, non-party witness Scott Forbes specially appeared on March 6, 2006 to object to Magistrate Judge Eaton's Order insofar as it required Forbes to appear for a deposition by or before a certain date. Plaintiffs responded to Scott Forbes' Objections on March 7, 2006, and Forbes replied to Plaintiffs' response on March 10, 2006.

For the reasons contained herein, this Court DENIES Defendants' and Forbes' requests to set aside or modify Judge Eaton's Order. This Court AFFIRMS and ADOPTS Judge Eaton's Order, except for modifications to specific

discovery deadlines, and except for Judge Eaton's ordering the production of deposition transcripts which would require Defendant Cendant Corporation to violate the Confidentiality Order of Judge Walls in the District of New Jersey.

## DISCUSSION

Rule 72(a) of the Federal Rules of Civil Procedure ("Rule 72(a)") provides that:

> Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order . . . . The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

Fed. R. Civ. P. 72(a). "A magistrate judge's resolution of discovery disputes deserves substantial deference." Weiss v. La Suisse, 161 F. Supp. 2d 305, 321 (S.D.N.Y. 2001). "[I]n resolving discovery disputes, the Magistrate is afforded broad discretion, which will be overruled only if abused." Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc., 124 F.R.D. 75, 77 (S.D.N.Y. 1989). See also Rodriguez v. Pataki, 293 F. Supp. 2d 313, 314-15 (S.D.N.Y. 2003) (strictly adhering to Rule 72(a)'s clearly erroneous and contrary to law standards).

A.   <u>Objection One: Deposition Transcripts</u>

Defendants first object to Judge Eaton's direction that they produce the transcripts of depositions given by particular witnesses in connection with <u>In re Cendant Corporation Securities Litigation</u>, 98 CV 1664 (WHW) (D.N.J.). Defendants argue that producing certain of these transcripts is impossible, either because some of those depositions have not yet taken place, or because others of those depositions are governed by the Confidentiality Order issued by Judge Walls in the District of New Jersey. (Defs.' Objs. at 10.)

Magistrate Judge Eaton's Order does not envision the production of depositions which have not yet taken place. Rather, his Order requires that depositions "<u>given</u> by particular witnesses" be produced by Defendants. (Order, Feb. 22, 2006 at ¶ 1 (emphasis added).) Transcripts for depositions which have not yet been "given" cannot be, and therefore are not required to be, produced on a date before they have taken place.

The Court is troubled by Defendants' having waited until now to alert Judge Eaton about the Confidentiality Order's relevance to the instant discovery dispute, especially in light of this Court's Order of March 1, 2006

3

admonishing the parties that any objection to Judge Eaton's Order is "not to be based on facts or information that the parties did not present to Judge Eaton for his consideration before he issued his Order."  (See Order of J. Batts, Mar. 1, 2006, at 2.)  However, the New Jersey court must retain enforcement power over its own confidentiality orders if it is to ensure the progress of its own caseload and maintain jurisdiction over the matters before it.  See Amer. Booksellers Assoc., Inc. v. Houghton Mifflin Co., Inc., 1998 WL 436364, at *3 (S.D.N.Y. 1998) ("If there was no exclusive jurisdiction, the Orders would be subject to inconsistent interpretations all over the country . . . .").

Though this Court had been apprised in a previous hearing that Judge Walls had issued a Confidentiality Order, (see Transcript of July 7, 2005 Hearing, at 17:20 - 19:11), whether Judge Eaton had this information before him upon issuing his Order is unclear.  Had Judge Eaton been made aware of the scope of Judge Walls' Confidentiality Order, he likely would have crafted carefully an instruction that did not command Defendants to violate that order.  In fact, this is precisely what Judge Eaton did in regard to the deposition transcript of Marc Rabinowitz, the

confidentiality provisions for which he had been timely notified. (<u>See</u> Order at ¶ 1.)

Defendants' failure to notify Judge Eaton in a timely fashion notwithstanding, the Court modifies Paragraph 1 of Judge Eaton's Order, but only inasmuch as his Order requires Defendants to produce deposition testimony in violation of Judge Walls' Confidentiality Order. The instruction Judge Eaton provided as to Marc Rabinowitz' deposition is now also the instruction for the depositions the production of which would require Defendants to violate Judge Walls' Confidentiality Order.

B.  <u>Objection Two: Evidence Related To Henry Silverman's Knowledge of the Accounting Irregularities</u>

Second, Defendants object to Judge Eaton's instruction that they produce "all documents that Defendants contend show, demonstrate, and/or prove that the Silverman stock sales were not related to the Accounting Irregularities and/or the public disclosure of the Accounting Irregularities." (Defs.' Obj's. at 11; <u>see</u> Order at ¶ 2.) Defendants argue that this instruction is ambiguous. However, Judge Eaton's language is plain; his Order requires Defendants to produce any documents they believe would

directly prove that Defendant Silverman's stock sales were unrelated to his knowledge of the Accounting Irregularities.

Defendants maintain that they are troubled by what they believe is Judge Eaton's command that they prove a "negative." In light of Defendants' contention elsewhere that "[a]ll the evidence shows that there is no connection between the early 1998 stock sale and discovery of the Accounting Fraud", (Defs.' Obj.'s at 12), ordering them to produce the evidence that informed their contention is not overly burdensome. Judge Eaton's Order on this point is not clearly erroneous or contrary to law, and shall not be set aside.

C.  <u>Objections Three and Four: Limitations on Discovery Regarding the Accounting Fraud</u>

Defendants object to Judge Eaton's having denied their request to limit discovery of the Accounting Fraud to the following areas: "(1) when the Accounting Fraud was discovered; (2) whether the Accounting Fraud influenced the decision to purchase Credentials; and (3) whether the Accounting Fraud was disclosed to Plaintiffs before April 10, 1998." To bolster their contention, Defendants cite to a hearing before this Court from more than three years ago,

6

in which the Court expressed some initial doubt about the viability of Plaintiffs' fraud claims.  (See Transcript of Feb. 6, 2003 Hearing, at 22:20 – 24:21.)  But Defendants have mistaken the Court's early hesitation about Plaintiffs' fraud theories for its definitive pronouncement that anything related to the alleged Accounting Fraud is completely irrelevant to this case.

To the contrary, this Court has since countenanced Plaintiffs' discovery regarding the Accounting Fraud, and has acknowledged the importance of that discovery to the ultimate disposition of this case.  Most recently, during a hearing on July 7, 2005, the Court indicated that Plaintiffs' fraud-related theories likely were sufficient to immunize Plaintiffs' claims against summary judgment: "[B]elieve me, it just doesn't seem to me that, if we're talking about a fraudulent inducement, there's no record of it, but it's just based on what he said, she said.  I don't see how this is going to get resolved, quite frankly, on summary judgment . . . ."  (Transcript of July 7, 2005 Hearing, at 53:2 – 53:6.)  The Court also has recognized that Plaintiffs' Amended Complaint incorporates claims involving Defendants' Accounting Fraud, (Transcript of Jan. 19, 2005 Hearing, at 2:23 – 6:17); evidence about the fraud

7

consequently should be discoverable.  See also CSI Investment Partners II, L.P. v. Cendant Corp., 2002 WL 925044, at *7-8 (S.D.N.Y. Feb, 28, 2002) ("Had [Plaintiffs] been aware of the nature and scope of the accounting irregularities and fraud at Cendant, [Plaintiffs] would not have entered in to the Stock Purchase Agreement.  These allegations plead fraud with sufficient particularity.") (internal quotations and citations omitted).

Moreover, as Judge Eaton states, one of Plaintiffs' primary theories is that knowledge of the Accounting Fraud influenced the decision not to purchase Credentials, but to structure the purchase as part cash and part earn-out. (Joint Letter to Magistrate Judge Eaton, Feb. 21, 2006 ("Joint Letter"), 3-10.)  For this reason, discovery shall not be limited, as Defendants request, to whether the Accounting Fraud influenced Defendants' decision to purchase Credentials.  Paragraph 4 of Judge Eaton's Order shall not be set aside.

Defendants also object to Judge Eaton's having afforded more than half a day to Plaintiffs to depose Defendant Henry Silverman.  They contend that the amount of time directed by his Order is warranted only if the Accounting Fraud is addressed during the deposition.  (Defs.' Obj.'s at 13-14.)

8

Because this Court has ruled that Plaintiffs' discovery may involve inquiry into the Accounting Fraud, Paragraph 3 of Judge Eaton's Order is not clearly erroneous or contrary to law, and shall not be set aside.

D.   <u>Objection Five: Deposition of Scott Forbes</u>

Defendants, along with Scott Forbes in his letters to the Court, object to Judge Eaton's having ordered Forbes to appear for a deposition, but these objections are unavailing.  Scott Forbes, a former employee of Defendant Cendant Corporation, now resides in London, England.  The Walsh Act provides that he may be subpoenaed according to the following terms:

> A court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it, or before a person or body designated by it, of a national or resident of the United States who is in a foreign country, or requiring the production of a specified document or other thing by him, if the court finds the particular testimony or the production of the document or other thing by him is necessary in the interest of justice, and, in other than a criminal action or proceeding, if the court finds, in addition, that it is not possible to obtain his testimony in admissible form without his personal appearance or to obtain the production of the document or other thing in any other manner.

28 U.S.C. § 1783.  Together, Forbes and Defendants cite this statute to raise three objections to Judge Eaton's Order.

First, that the Walsh Act applies only to subpoenas for trials and grand jury testimony, not to subpoenas for deposition testimony is, they contend, a well-established rule.  While it may be true that grand jury and trial testimony is subject to a federal court's subpoena under the Walsh Act, see, e.g., United States v. Danenza, 528 F.2d 390 (2d Cir. 1975) (court compelled trial testimony before a grand jury of a United States citizen living in Italy), there are no indications that the Walsh Act is limited to such instances.  Federal courts have compelled deposition testimony under the Walsh Act as well.  See, e.g., Klesch & Co., Ltd. v. Liberty Media Corp., 217 F.R.D. 517 (D. Colo. 2003) (requiring a non-resident party to appear for a deposition), and Estate of Yaron Ungar v. Palestinian Authority, 2006 WL 225839 (S.D.N.Y. 2006) (issuing subpoena for United States citizen residing in Egypt to appear for a deposition).  Despite Forbes' and Defendants' efforts to characterize Klesch and Ungar as incorrectly decided anomalies, a court's compelling deposition testimony appears by the face of the Walsh Act to have been contemplated by Congress, especially in light of the Act's stated purpose to

"provid[e] equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects." Sen. Rep. 88-1580 at 1964 U.S.C.C.A.N. 3782, 3783 (Sep. 15, 1964).[1]  See also Order, In the Matter of the Arbitrations between London Life & Casualty Reinsurance Corp. v. Odyssey America Reinsurance Corp., 05 Civ. 7160 (DAB), Aug. 25, 2005.

Forbes and Defendants also contend that because obtaining Forbes' testimony in another manner is possible, the Walsh Act does not apply. For example, Forbes suggests that his testimony may be obtained via procedures prescribed under the Hague Convention. But the discovery deadline in

---

[1] Scott Forbes refers this Court to an excerpt from the legislative history which states that "[i]f the court is of the opinion that the interest of justice can be served by a deposition, without the personal appearance of the witness at the trial, then it is not precluded from exercising its discretion and denying the subpoena [sic]." Sen. Rep. 88-1580 at 1964 U.S.C.C.A.N. 3782, 3790 (Sep. 15, 1964). Forbes contends that because Congress posited deposition testimony as an alternative to compelling a witness to appear for trial, Congress did not intend to include deposition testimony in its Walsh Act provisions. Forbes' argument, however, ignores the more feasible interpretation of this language, which is that a court may exercise its Walsh Act authority to compel a witness' deposition testimony in lieu of the witness' trial testimony. Both of these alternatives would be pursuant to a court's authority under the Walsh Act. This interpretation is especially persuasive in light of the Walsh Act's broad purpose to facilitate the gathering of evidence across international boundaries.

this case is nearing, rendering the Hague Convention's procedures impractical.  Moreover, that the Hague Convention provides one means for obtaining Scott Forbes' testimony does not mean that it is the only means for doing so.  See <u>Societe Nationale Industrielle Aerospatiale v. United District Court for the Southern District of Iowa</u>, 482 U.S. 522, 534 (1987) ("The text of the [Hague] Evidence Convention itself does not modify the law of any contracting state, require any contracting state to use the Convention procedures, either in requesting evidence or in responding to such requests, or compel any contracting state to change its own evidence-gathering procedures.").

Forbes and Defendants argue that Plaintiffs also may obtain the information they seek from Forbes' testimony during the criminal trials of Walter Forbes and Kirk Shelton.  Not only was Scott Forbes' criminal trial testimony not addressed in the parties' February 21, 2006 joint letter, but even had it been mentioned, Defendants have failed to show how Judge Eaton's determination that Plaintiffs should have the opportunity to depose Scott Forbes to garner new testimony or to clarify previous testimony is "clearly erroneous".

12

Finally, Forbes and Defendants contest that Forbes' testimony is not necessary to promote the interest of justice under the circumstances. (Forbes' Mar. 6, 2006 letter, at 3-4.) The inconvenience imposed on Forbes is a major premise driving this objection (id. at 4), but Judge Eaton's having provided Forbes with the option of appearing for his deposition in London undoes the thrust of this premise.[2] Forbes further suggests that Plaintiffs have idled until the eleventh hour to depose Scott Forbes, but this is simply not true. Only very recently did Judge Walls lift the stay on deposing Scott Forbes, (See Joint Letter, at Ex. 28), and Plaintiffs should not be penalized for respecting that stay.

For these reasons, Judge Eaton's instruction that Scott Forbes appear for a deposition is not clearly erroneous or contrary to law, and accordingly it shall not be set aside.

---

[2] In his March 10, 2006 letter, Forbes argues that the Walsh Act "provides no authority for Judge Eaton to order the deposition of a non-resident to be held in the United Kingdom." (See Forbes' March 10, 2006 letter, at 4 n.4.) So long as the parties adhere to Rule 28(b) of the Federal Rules of Civil Procedure, which governs the taking of depositions in foreign countries, Forbes' deposition may take place in London.

**E.   Objection Six: Sanctions Imposed on Cendant**

Lastly, Defendants object to Judge Eaton's imposition of sanctions on Defendant Cendant.  Pursuant to Rule 37(a)(4)(A) of the Federal Rules of Civil Procedure, a judge may impose sanctions on a party if its opposition to opposing counsel's motion for disclosure is unjustified.  Fed. R. Civ. P. 37(a)(4)(A).  "A district court has wide discretion in imposing sanctions, including severe sanctions, under [Rule 37], and will only be reversed if its decision constitutes an abuse of discretion."  <u>Daval Steel Products v. M/V Fakredine</u>, 951 F.2d 1357, 1365 (2d Cir. 1991).  Because Defendants persistently have opposed Plaintiffs' disclosure requests by arguing that, contrary to statements made by this Court both at hearings and in written orders, evidence corroborating Plaintiffs' fraud-based theories is not discoverable (<u>see</u>, <u>e.g.</u>, Joint Letter, at 32-33), Judge Eaton's imposition of sanctions is not an abuse of his discretion.

## CONCLUSION

Having reviewed Judge Eaton's Order for any directions that are clearly erroneous or contrary to law, this Court

hereby DENIES Defendants' and Forbes' requests to set aside Judge Eaton's Order. Judge Eaton's February 22, 2006 Order is hereby AFFIRMED and ADOPTED, with the exception of his instructions in Paragraph One requiring Defendants to violate Judge Walls' Confidentiality Order, and with the following deadline modifications:

1) Defendants are directed to produce the material addressed in Paragraph 2 of Judge Eaton's Order <u>within five days of the date of this Order</u>.

2) Regarding Paragraph 3 of Judge Eaton's Order, Defendant Henry Silverman shall

    (a) Provide, within five days of the date of this Order, firm dates and times (all prior to <u>April 22, 2006</u>) for a total of seven hours of questioning by Plaintiffs; or

    (b) Provide, within five days of the date of this Order, a firm date and time for four hours of questioning prior to <u>April 22, 2006</u>, and a firm date and time for an additional five hours of questioning prior to <u>April 22, 2006</u>).

3) Regarding Paragraph 5 of Judge Eaton's Order, Scott Forbes shall

    (a)    Accept service of the subpoena by fax and agree with Plaintiffs to appear in New York City for deposition on or before <u>May 12, 2006</u>, in which case Plaintiffs must pay him $5,000 in advance to cover his travel costs and loss of time; or

    (b)    Appear for deposition in London, England at the offices of Winston & Strawn on or before <u>May 12, 2006</u>, in which case Plaintiffs must serve the subpoena formally but must pay him only the required attendance fees and the attorneys for the parties must make arrangements, at their own cost, to appear at the deposition in person or by telephone (as each may choose).

(4) Regarding Paragraph 6 of Judge Eaton's Order, the Defendants shall either:

    (a)    Cause Defendant Cendant Corporation to make a payment to Plaintiffs of $5,000 <u>within five days of the date of this Order</u>; or

    (b)    Notify Plaintiffs <u>within five days of the date of this Order</u> that Defendants require Plaintiffs to serve and file an affidavit

>documenting what they claim to be their actual expenses incurred in making the discovery motions contained in the Joint Letter submitted on February 21, 2006. In that event, Plaintiffs may choose the time for serving and filing such affidavit, and Defendants must serve and file any opposing papers within ten business days after receipt.

This Court also modifies Paragraph 1 of Judge Eaton's Order so that the instruction Judge Eaton provided as to Marc Rabinowitz' deposition testimony is now also the instruction as to the depositions the production of which would require Defendants to violate Judge Walls' Confidentiality Order.

With the passage of time, and because of the litigiousness of the parties, the original date for the close of fact discovery is extended until May 12, 2006. This includes all fact discovery save for the testimony of individuals who currently are awaiting the completion of the criminal proceedings against them. The parties must commence all expert discovery in time to complete it within sixty days after May 12, 2006. Within 30 days of the

completion of expert discovery, notice of either party's intent to file a motion for summary judgment shall be sent to the opposing parties and to this Court. Should no such motion be noticed, the Court shall set a date for a conference with the parties.

With the direction of this Order, the Court expects that there will be no further discovery disputes. However, with the history of the parties, the Court's expectations may be overly optimistic. Should discovery disputes arise, and the Court strongly encourages the parties to resolve them by themselves, as a last resort, the parties are directed to Judge Eaton. The Court greatly appreciates Judge Eaton's excellent supervision of this complicated matter and for his patience with these parties.

SO ORDERED.

Dated: New York, New York
March 15, 2006

_Deborah A. Batts_
Deborah A. Batts
United States District Judge